**In re WYETH COMPANY, Debtor.**

**Bankruptcy No. 89–50102–2–11.**

United States Bankruptcy Court, W.D. Missouri.

Dec. 20, 1991.

Bruce E. Strauss, Kansas City, Mo., trustee.

Michael F. Flanagan, Kansas City, Mo., for debtor.

James Dale, Leila Hicks and Shirley D. Lawrence, St. Joseph, Mo., pro se claimants.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

The Trustee in this chapter 7 liquidation bankruptcy has objected to claim numbers 405 and 406 by James F. Dale, claim numbers 413 and 415 by Leila W. Dale Hicks, and claim number 416 by Shirley D. Lawrence. This Court entered orders disallowing those claims as filed and allowing them as recommended by the Trustee. The orders were made subject to modification if objections were received from the above named claimants within 20 days. Claimants did object in a timely manner and a hearing was set for November 25, 1991. The Court now considers whether to modify its orders of October 15, 1991, with respect to the above claims.

### FACTS

Hicks, Dale, and Lawrence all received stock in the Debtor company as part of the settlement of the estate of John Wyeth. In 1982, the claimants agreed to sell their shares back to the corporation and they all took promissory notes in return for the

shares. All of the notes are dated March 1, 1982. Debtor paid on the notes over the following five years and last paid on them March 1, 1987. The notes remained unpaid as of March 29, 1989, when Debtor filed its petition for bankruptcy. Hicks, Dale, and Lawrence have all filed claims against the estate on account of these unpaid notes.

## DISCUSSION

*a. Subordination of Claims Under § 510(b)*

■ The Trustee's objection asked that these claims be allowed (with some modification to the interest due) but that the debts based on these promissory notes be subordinated to the debts owed general unsecured creditors in accordance with § 510(b). Section 510(b) reads as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (1988). The trustee's request to subordinate the debt represented by the notes at issue here must be denied. These claims neither fall under the plain language of the statute nor does the set of facts before the court bear any relationship whatever to the policy concerns of Congress when this section was made a part of bankruptcy law.

There is no assertion that these claims arise out of the rescission of a sale or purchase of Debtor's securities, or that there is a claim for reimbursement or contribution. Trustee believes that the claims must be subordinated because they arise as a result of a sale of stock. But the statute specifies "a claim ... for damages arising from the purchase or sale" of the Debtor's securities is to be subordinated. The use of the term "damages" implies more than a simple debt, but at minimum, there must be a claim for damages resulting from some defect with reference to such a purchase or sale. Such a claim must directly concern the stock transaction and not merely be a claim on a debt. *In re Blondheim Real Estate, Inc.*, 91 B.R. 639, 640–41 (Bankr. D.N.H.1988).

Moreover, the legislative history of the Bankruptcy Reform Act of 1978 reveals a very specific type of problem that Congress sought to combat by formulating this section of the statute. The transaction at issue here does not remotely resemble that problem. In the House report, the problem was described this way:

> A difficult policy question to be resolved in business bankruptcy concerns the relative status of a security holder who seeks to rescind his purchase of securities or to sue for damages based on such a purchase: should he be treated as a general unsecured creditor based on his tort claim for rescission, or should his claim be subordinated?

H.Rep. No. 595, 95th Cong., 1st Sess. 194 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6154. The concern was that an equity holder could elevate his claim to that of an unsecured creditor through a claim for rescission of his purchase of the debtor's securities or a tort claim for damages arising out of his purchase of the debtor's securities. *Id.; see generally* John J. Slain & Homer Kripke, *The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors*, 48 N.Y.U.L.Rev. 261 (1973). Section 510(b) seeks to prevent that from occurring. The philosophy behind this code section is that in bankruptcy where there is fraud or illegality in the sale of securities, it is the purchaser of the securities that must bear that risk. By allowing an equity holder asserting a rescission or tort damage claim to share *pari passu* with unsecured creditors, the unsecured creditors are forced to bear that risk. But subordination of rescission or tort damage claims arising out

**922**

of an illegal stock transaction keeps the risk where it belongs, i.e., upon the shoulders of the equity purchaser. H.Rep. No. 595, 95th Cong., 1st Sess. 194–96 (1977).

With that background in mind, it is easy to see that attempting to apply § 510(b) to the present case would be misapplication of the statute. The policy considerations which drive § 510(b) are conspicuously absent in the case before the Court. This is not a case of an equity holder who is trying to better his position by trying to undo the purchase transaction with a rescission or damage claim. This claim simply arises out of a debt on a promissory note.

The Court, therefore, finds no merit in the Trustee's claim that the debt on these subject promissory notes should be subordinated to the position of unsecured creditors under § 510(b).

*b. Interest Due on the Promissory Notes*

■ The Court finds that the Trustee's objection to the amount of interest claimed is well taken. Under § 502(b)(2), only interest on an obligation which has matured as of the date of filing of the petition may be allowed. Therefore, the Court agrees with the Trustee that the subject claims may be allowed only to the extent of principal remaining on the notes plus interest accrued on them from the date of the Debtor's last payment (March 1, 1987) through the day before the petition was filed (March 28, 1989). Accordingly, the Court will not modify its order with respect to interest allowable.

### CONCLUSION

In accord with the above discussion, the Court's orders of October 15, 1991 with regard to claim numbers 405, 406, 413, 415, and 416 are hereby MODIFIED only with respect to their priority of distribution. The claims will not be subordinated pursuant to § 510(b), but will have the same priority as those of general unsecured creditors. The trustee may submit orders following the foregoing opinion.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.