In re BETACOM OF PHOENIX, INC., an Arizona Corp. & affiliates, Debtor.

F. Patrick NUGENT and Anita Nugent, Defendants–Appellants,

v.

AMERICAN BROADCASTING SYSTEM, INC., a Delaware Corporation and affiliates, Beta Communications, Inc., an Arizona Corporation and affiliates, and Betacom of Phoenix, Inc., an Arizona Corporation, Plaintiffs–Appellees.

CIV. No. 97–2484 PHX BMV.
Bankruptcy No. 95–4510 PHX RGM.
Adversary No. 96–786.

United States District Court,
D. Arizona.

Sept. 24, 1998.

James E. Cross, Phoenix, AZ, for Debtor.

Michael Evan Gottfried, Phoenix, AZ, for Defendants–Appellants.

James E. Cross, Paul Sala, Joseph K. Brinig, Jr., Phoenix, AZ, for Plaintiffs–Appellees.

## Order and Memorandum

VAN SICKLE, District Judge.

This is an appeal by Defendants F. Patrick and Anita Nugent ("Nugents") from an order of the bankruptcy judge: Granting Debtors' Motion for Summary Judgment in Part and Denying Nugents' Cross–Motion for Summary Judgment ("Order").

The Order, filed September 30, 1997, concerned the application of section 510(b) of the Bankruptcy Code ("the Code"), which provides, in pertinent part, that claims for damages "arising from the purchase or sale" of a security of the debtor shall be subordinated. 11 U.S.C. § 510(b). The bankruptcy court, the Honorable Robert G. Mooreman presiding, found the language of section 510(b) plain, granting the debtors' motion for summary judgment in part, and subordinating the Nugents' claim for damages arising out of the alleged breach of an Agreement and Plan of Merger ("Agreement") and a subsequent Amendment thereto (collectively "Merger Agreements"). The Nugents thereafter appealed Judge Mooreman's decision to this Court.

## I. BACKGROUND

Betacom of Phoenix, Inc. ("BP"), Beta Communications, Inc. ("BCI"), and American Broadcasting Systems, Inc. ("ABS") (collectively, the "Debtors"), filed individual voluntary Chapter 11 Bankruptcy petitions in 1995. BP and BCI filed on May 26, 1995 and ABS filed on May 31, 1995. The separate cases are under joint administration pursuant to the bankruptcy court's orders.

The Nugents initiated a civil action in the United States District Court, District of Arizona, in 1992 against ABS, BP, and BCI, CIV 92–1298 PHX BMV. On December 6, 1995, the bankruptcy court lifted the automatic stay to allow the Nugents to liquidate their claims against the Debtors in the district court civil action. In the Fourth Amended Complaint, which was before the district court at the time of the bankruptcy court's decision, the Nugents set forth seven counts upon which they sought relief. In general, these claims encompass: 1) breach of contract claims arising out of an alleged oral consultancy agreement; 2) breach of contract claims arising out of the Merger Agreements; 3) various fraud claims; and 4) a breach of fiduciary duty claim resulting in a constructive trust.

On October 4, 1996, the Debtors filed an Adversary Proceeding against the Nugents in the bankruptcy court. The Debtors sought a determination that the claims asserted by the Nugents are equity interests in ABS, or are subject to mandatory subordination pursuant to 11 U.S.C. § 510(b). The bankruptcy court granted the Debtor's motion in part, holding that section 510(b) applied broadly to claims arising out of, or referenced in an agreement to purchase or sell securities. The bankruptcy court did not grant the Debtors' motion with respect to the alleged oral consultancy agreement, stating:

> The Court is unable to determine ... whether these claims are related to the Merger Agreements and the purchase or sale of the Debtor's securities, or if they are claims which are sufficiently independent of the Merger Agreements such that, if they are related, the relationship could only be seen as incidental.

Order at 8. Subsequent to the bankruptcy judge's order that is the subject of this appeal, the Nugents filed a Fifth Amended Complaint in the civil action before the district court.

The underlying relationships of the parties are as follows: In 1991, the Nugents owned 80% of the issued shares in BCI. BCI owned all of the issued and outstanding shares of BP. BP owned Spanish language radio stations KVVA–AM and KVVA–FM. On May 24, 1991, the Nugents and ABS entered into the original Agreement. The parties entered a superseding Amendment thereto dated September 6, 1992 and allegedly executed it on February 6, 1992. Under the Merger Agreements, ABS was to acquire BCI in exchange for both stock in ABS and cash. The cash was to be paid to BCI shareholders as soon as practical following an initial public offering. Pursuant to the Merger Agreements, the ABS stock was to be issued to BCI shareholders upon the conclusion of an audit specified in the Merger Agreements and a 45 day escrow period. The audit was not performed.

The parties have submitted contradictory evidence on the following points: 1) Whether the closing agreement was ever executed by all of the parties and whether it was ever delivered as signed by the Nugents; 2) whether the date and time for a closing date was ever agreed to; 3) whether the Nugents delivered their signed original Deed of Release and Reconveyance, releasing their security interest in assets of BCI; 4) whether the Debtors lied to the Federal Communications Commission ("FCC") to effectuate the transfer of licenses; 5) whether the Debtors filed a Certificate of Merger not signed by anyone on behalf of BCI with the Delaware Secretary of State; 6) whether the Debtors issued stock for the Nugents' benefit; and 7) whether the Debtors wrongfully took possession of the assets of BCI.

The Nugents point to ABS's failure to comply with their requests to review the business records both before and after the commencement of the civil court action as explanation for their slow realization that the Merger Agreements did not close, rather they now assert in the Fifth Amended Complaint that the assets of BP and BCI were converted by ABS. At the very least, the civil court record reveals that ABS's abuse of the discovery process has resulted in over $17,000 in sanctions.

## II. DISCUSSION

The first issue this Court must decide is: under section 510(b) does the language "arising from the purchase or sale of a security" require an actual purchase or sale of securities? For the reasons stated below, this Court concludes that subordination under section 510(b) does not apply unless there is an actual purchase or sale of securities. The second issue this Court must decide is whether under Federal Rule of Civil Procedure 56(c) there is a genuine issue of material fact as to whether or not the Merger Agreements did close which would preclude summary judgment in this case? Again, for the reasons stated below this Court concludes that there are genuine issues of material fact so as to preclude summary judgment.

Section 510(b) of the Code mandates subordination of damage claims "arising from the purchase or sale" of a security of the debtor. 11 U.S.C. § 510(b). The bankruptcy court found the language of section 510(b) plain. In making its determination, the court found three situations in which the language applied: "1) [to] any claim arising out of an attempt to rescind a sale or purchase of a security of the debtor; 2) [to] any claim arising from damages surrounding a sale or purchase of a security of the debtor; or 3)[to] any claim for reimbursement or contribution under section 502 on account of such a security of the debtor." Order at 6. In construing the "arising from" language found in the statute itself, the bankruptcy court based its holding upon the premise that "a claim which is related to, or referenced in, the purchase or sale transaction may be subordinated depending upon the circumstances involved and the importance of the action giving rise to the claim and whether the claim is sufficiently independent of the purchase or sale." *Id.* at 7. The court went on to hold that "the merger of the [sic] [BCI] into ABS and the Agreement between the parties to surrender [BCI] stock in return for stock in ABS and

for other cash is a purchase or sale of securities of the Debtor." *Id.* at 7–8.

This Court reviews de novo the bankruptcy court's legal conclusions and mixed questions of law and fact. *In re Lee,* 179 B.R. 149, 155 (9th Cir. BAP 1995). Factual determinations should not be disturbed unless they are "clearly erroneous." *In re Itule,* 114 B.R. 206, 209 (9th Cir. BAP 1990).

■ "The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). As an initial matter, the plain meaning of section 510(b) will be enforced according to its terms when the statute is clear and unambiguous on its face. *Patterson v. Shumate,* 504 U.S. 753, 759, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). "Ambiguity exists when a statute is capable of being understood [in two or more different senses] by reasonably well-informed persons ...." 2A *Norman J. Singer, Sutherland Statutory Construction* § 45.02, at 5 (5th ed.1992 rev.). Where ambiguity does exist, a court must attempt to discern the legislature's intent.

■ The plain meaning of section 510(b) mandates that a claim must arise from the *actual* purchase or sale of a security. Something "arises" when it springs up or originates from a source. *Black's Law Dictionary* 108 (6th ed.1990); *see also Webster's Third New International Dictionary* 117 (unabridged ed.1976) (defining "arising" as the point in time when a thing comes into being from a specified source). In contrast, application of section 510(b) to a claim that "arises from" an agreement to purchase or sell securities where the agreement is not consummated effectively eviscerates the purchase or sale requirement as dictated by the plain meaning of the statute. Therefore, this Court holds that section 510(b) requires the actual purchase or sale of securities before a claim arising thereunder is subject to subordination.

Alternatively, at least one court has found ambiguous the phrase "arising from the purchase or sale." *In re Granite Partners,* 208 B.R. 332, 339 (Bankr.S.D.N.Y.1997) (suggest-ing "that the injury must either flow from the *actual* purchase or sale" or "that the purchase or sale must be part of the causal link although the injury may flow from a *subsequent* event") (emphasis added). Even though the facts of *In re Granite Partners* are readily distinguishable and this Court is confident that the plain language of section 510(b) is sufficient to require the actual purchase or sale of securities in order to mandate subordination, for the reasons stated, this Court finds the legislative history indicates that Congress intended section 510(b) to require an actual purchase or sale of securities.

As previously stated, a literal reading of section 510(b), with respect to the breach of contract claims associated with the Merger Agreements, implies that the injury must flow from the actual purchase or sale of securities. An expansive reading of section 510(b) implies that an injury that arises from an agreement to purchase or sell securities is part of the causal chain regardless of whether the transaction is consummated. Since the Nugents' claims can exist with or without the consummation of a purchase or sale of securities, reasonably well-informed persons could interpret section 510(b) as applying in either instance, and hence, the section may be read as ambiguous.

■ In enacting section 510(b), Congress sought to allocate both the risks of insolvency and fraud in the issuance of securities between equity investors and general unsecured creditors. H.Rep. 95–595, at 195 (1977); *see In re U.S. Financial Inc.,* 648 F.2d 515 (9th Cir.1980). Congress recognized that general unsecured creditors rely on the equity cushion created by the investors and do not share with the business' ownership in the potential benefit of profit. *Id.* Therefore, while equity investors and general creditors each bear some risk of insolvency, they do not share the risk equally. Rather, the absolute priority rule necessitates that shareholders' claims be subordinated to those of the general unsecured creditors' claims. Yet, Congress was concerned with the broader issue of the dissatisfied shareholder's efforts to recapture its investment from the insolvent corporation by

cloaking a claim as one of an unsecured general creditor. H. Rep. 95–595, at 196 (1977) (citing *John J. Slain & Homer Kripke, The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors,* 48 N.Y.U.L. REV. 261 (1973)).

As an initial matter, it seems anomalous to apply section 510(b) to a claim by a party who is not a shareholder. The underlying premise of section 510(b) allows subordination of a shareholder's claim in order to uphold the absolute priority rule. Congress sought to legislate the common law rule which protected general unsecured creditors who relied on the equity cushion supplied by shareholders. Where a person is not a shareholder and his or her claim stems from Merger Agreements which did not result in the purchase or sale of securities, any claimed reliance by subsequent creditors is misplaced. Without the equity that would be supplied by a shareholder's investment, there can be no reliance by the creditors on that equity. Therefore, the parties Congress sought to protect, creditors, are not harmed when they rely on the present capitalization of the corporation. Rather, harm may occur when either the corporation misstates its present capitalization or the creditors speculate about the corporation's future, yet unrealized, capitalization. While Congress was concerned with shareholders' attempts to cloak their claims as general unsecured creditors, the case at bar is distinguishable. As indicated by this Court's orders of sanctions upon the Debtors, it is the Debtors who have attempted to cloak the evidence before this Court. This Court refuses to reward the Debtors' abuse of the discovery process by characterizing the evolution of the Nugents' claims as anything other than an attempt to discover how and why they did not receive compensation for their interests in BCI.

▮ Congressional intent may be clarified by analogizing to similar language in an unrelated statute, that applies to similar parties, subject matter or relationships. 2B Sutherland § 53.03, at 233. The use of similar language indicates that the two statutes should be interpreted pari passu, particularly where they share the same raison d'etre. *Northcross v. Board of Educ.,* 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973). In the instant case, section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated thereunder provide clarification.

Section 10(b) and Rule 10b–5 prohibit fraud "in connection with" the purchase or sale of securities. The Supreme Court has limited the private cause of action under Rule 10b–5 to actual purchasers and sellers, and does not confer standing upon a person who decided not to buy securities due to material misrepresentations. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737–38, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

This Court finds the similarity between section 510(b) and section 10(b) and Rule 10b–5 thereunder instructive. First, the "arising from" requirement of section 510(b) and the Supreme Court's interpretation of the "in connection with" requirement of section 10(b) and Rule 10b–5 apply to the same subject matter, the purchase or sale of securities. Second, both provisions involve similar parties, buyers and sellers of securities. Third, the compared language serves a similar purpose by limiting the causal chain. Rule 10b–5's "in connection with" requirement is a limitation on standing for the private cause of action; section 510(b)'s "arising from" requirement limits the class of claims that may be subordinated under the Code.

While the compared language serves a similar purpose, a broad reading of the "in connection with" and "arising from" language creates distinct results in the application of each provision. A broad interpretation of "in connection with" language creates more claims for fraud, thus increasing litigation. Conversely, a broad interpretation of the "arising from" language does not create more claims, rather it allows more claims to be subordinated in bankruptcy, which in most cases renders the claim worthless, thus limiting litigation. This Court's interpretation of the "in connection with" language that appears in section 10(b) and Rule 10b–5 does not provide authority for limiting section 510(b)'s like language in pursuit of the same result; but the prior comparison of the simi-

lar subject matter, parties addressed, and purpose indicates that if the language is not synonymous it is nearly so, only the underlying result in limiting the causal chain is distinct. *But see In re Granite Partners,* 208 B.R. at 342. Therefore, the Supreme Court's interpretation of the "in connection with" language found in section 10(b) and Rule 10b–5 which requires the *actual* purchase or sale of securities, while persuasive, is merely instructive. *See Blue Chip Stamps,* 421 U.S. at 737–38, 95 S.Ct. 1917.

While the second issue, whether there exists a genuine issue of material fact as to the Nugents' status as shareholders of ABS, requires separate consideration; this Court concludes that section 510(b) requires the actual purchase or sale of the debtor's securities. This conclusion not only flows from the plain meaning of section 510(b), but also advances the policy choice that Congress made in enacting section 510(b) and further comports with the Supreme Court's interpretation of the nearly synonymous language found in section 10(b) and Rule 10b–5 thereunder.

Summary judgment is granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The moving party has the burden of establishing both the lack of any genuine issue of material fact and his or her entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The bankruptcy court's order indicates that the court implicitly found a purchase or sale of securities. Specifically, the court held that "the merger of the [sic] [BCI] into ABS and the Agreement between the parties to surrender [BCI] stock in return for stock in ABS and for other cash is a purchase or sale of securities of the Debtor." Order at 7–8. The key question is whether the bankruptcy court erred in concluding that a purchase or sale of securities occurred. Resolution of this issue requires this Court to review the bankruptcy court's determination that both the Nugents' allegations of material breaches of the Merger Agreements were unsupported in light of the evidence offered by the Debt-

ors as the moving party and that in viewing the evidence in a light most favorable to the Nugents as the non-moving party that the Debtors are entitled to judgment as a matter of law. This determination involves mixed questions of law and fact. Therefore, this Court reviews the bankruptcy court's order de novo.

■ As an initial matter, the Debtors have failed to meet their burden. In this case, the Nugents' presented unrebutted allegations that ABS breached conditions of the Merger Agreements. Further, the Nugents assert that the conditions precedent were material to the contract, the breach of which excused performance by the Nugents. In support of this claim, the Nugents point to several allegations which they assert raise genuine issues of material fact as to whether the Merger Agreements were breached by ABS.

The existence of one or more of the Nugents' allegations may result in a material breach of the Merger Agreements and a failure of the purchase or sale of the securities thereunder. In viewing the facts in a light most favorable to the Nugents as the non-moving party, the Debtors neither produced evidence which establishes the lack of any genuine issue of material fact in light of the Nugents' allegations nor cogent arguments that even if the Nugents' allegations are true that they are entitled to judgment as a matter of law.

Therefore, even if this is a purely factual question, which this Court rejects, the bankruptcy judge's implicit finding that a purchase or sale of securities took place is clearly erroneous.

THEREFORE IT IS ORDERED as set forth above that the bankruptcy court's Order Granting Debtors' Motion For Summary Judgment in Part is VACATED. This case is remanded to the bankruptcy court for further consideration consistent with this Court's ruling.

LET JUDGMENT BE ENTERED ACCORDINGLY.