272 B.R. 836 (2001)
In re MONTGOMERY WARD HOLDING CORP., a Delaware corporation, et al., Debtors.
Montgomery Ward Holding Corp., a Delaware corporation, Plaintiff,
v.
Robert Schoeberl, an individual, Defendant.
Bankruptcy No. 97-1409(PJW). Adversary No. A-99-560.
United States Bankruptcy Court, D. Delaware.
January 16, 2001.
*837 *838 Karen C. Bifferato, Connolly Bove Lodge & Hutz LLP, Wilmington, DE, Lloyd A. Palans, David M. Unseth, Bryan Cave LLP, St. Louis, MO, for Robert Schoeberl.
Daniel J. DeFranceschi, Richards, Layton & Finger, Wilmington, DE, Richard A. Chesley, Jones, Day, Reavis & Pogue, Chicago, IL, Richard M. Cieri, Jones, Day, Reavis & Pogue, Cleveland, OH, for Montgomery Ward Holding Corp.

*839 MEMORANDUM OPINION
PETER J. WALSH, Bankruptcy Judge.
Before the Court is the motion (Doc. # 5) of defendant Robert Schoeberl ("Defendant") to dismiss the complaint of plaintiff Montgomery Ward Holding Corp. ("Montgomery Ward") or alternatively, for a more definite statement. Defendant filed a $1,430,000.00 proof of claim in Montgomery Ward's bankruptcy case based on a promissory note Montgomery Ward issued as partial payment for redeemed stock. In its complaint, Montgomery Ward requests contractual, statutory and equitable subordination of Defendant's claim under 11 U.S.C. § 510 based on the note's origins as payment for equity and Defendant's status as a former shareholder.
For the reasons set forth below, I grant Defendant's motion to dismiss the count for statutory subordination under § 510(b)[1] and grant Defendant's motion for a more definite statement on the remaining two counts.

BACKGROUND
Montgomery Ward is the parent company of Montgomery Ward, LLC, formerly known as Montgomery Ward & Co., Inc., a nationwide retail merchandiser. On July 7, 1997, Montgomery Ward and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On July 15, 1999, an order was entered confirming the Debtors' chapter 11 plan ("Plan").
Montgomery Ward commenced this adversary proceeding on November 2, 1999. It makes the following allegations which Defendant does not dispute: On December 16, 1996, Montgomery Ward exercised its rights under a 1988 Stockholders' Agreement ("Stockholders Agreement") to redeem 200,000 shares of Montgomery Ward common stock from Defendant, a former employee. To purchase the shares, Montgomery Ward paid a certain amount of cash and issued a $3,975,000.00 promissory note ("Note") for the balance. The Note is payable in three equal annual installments of $1,325,000.00. Installments under the Note were unpaid as of the Debtors' petition date and form the basis of Defendant's proof of claim (Claim No. 9209) ("Claim").
Montgomery Ward's performance under the Note is subject to Article IV of the Stockholders' Agreement. Article IV establishes certain restrictions on Montgomery Ward's rights and obligations to redeem stock. In particular, Section 4 relieves Montgomery Ward from paying on the Note if payment violates: (1) any applicable state law in Montgomery Ward's state of incorporation; (2) any provisions of Montgomery Ward's material contracts or Certificate of Incorporation; and (3) any cash payment limitation then in effect as defined in the Stockholders' Agreement.
The Claim includes an addendum which asserts a right to recover "costs and expenses of enforcement, including, without limitation, attorneys' fees" incurred in enforcing Montgomery Ward's obligations under the Note. Proof of Claim # 9209, Exh. A, ¶ 1. The addendum asserts contingent, unliquidated claims based on rights to indemnification and contribution arising under Montgomery Ward's certificate of incorporation, bylaws, contract, or otherwise. Id., ¶ 11. This assertion was "filed only to preserve any and all rights and entitlements" of Defendant. Id.
*840 In Count I of its complaint, Montgomery Ward requests contractual subordination of the Claim under § 510(a) based on the terms of the Note and Section 4 of the Stockholders' Agreement. In Count II, Montgomery Ward requests statutory subordination under § 510(b) because it alleges the Claim is one for damages arising from the purchase or sale of its securities. In Count III, Montgomery Ward requests equitable subordination of the Claim under § 510(c) based on the Note's origins as payment for redeemed stock. Defendant seeks to dismiss all three counts under F.R.Civ.P. 12(b)(6) or in the alternative, for a more definite statement of each under F.R.Civ.P. 12(e)[2].

BACKGROUND
When apprising the sufficiency of a complaint for purposes of Rule 12(b)(6), the accepted standard is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [the plaintiff] to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The liberal pleading standard of the Federal Rules of Civil Procedure requires only a statement of jurisdiction and "a short and plain statement of the claim showing that the pleader is entitled to relief." Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 798 (3d Cir.1967). The complaint must afford the adversary fair notice of the nature and basis of the claim asserted and a general indication of the type of litigation involved. Id. The Federal Rules do not require that a complaint state all facts necessary to constitute a cause of action. Id.
In contrast, Rule 12(e) does not address the legal sufficiency of a pleading but permits the defendant to request clarification of an ambiguous pleading to prepare a meaningful response. See, e.g., Sisk v. Texas Parks and Wildlife Dep't, 644 F.2d 1056, 1059 (5th Cir.1981) citing 5 Wright & Miller, Fed. Practice & Procedure: Civil § 1356 at 590-91; Schaedler, 370 F.2d at 798-99. Under Rule 12(e), I may allow a plaintiff to amend a complaint to avoid the "draconian remedy" of dismissal if the complaint is inarticulate or vague. Schaedler, 370 F.2d at 799.
Rule 12(b)(6), however, authorizes a court to dismiss a claim based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) citing Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In these circumstances, dismissal is without regard to whether the complaint is based on an outlandish legal theory or on a close but ultimately unavailing one. Id. at 327, 109 S.Ct. at 1832. This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Id. at 326-27, 109 S.Ct. at 1832.
I. Contractual Subordination.
I find that dismissal of Count I for contractual subordination under § 510(a) is not appropriate under these standards. However, I agree with Defendant that Montgomery Ward should amend Count I of the complaint to identify which contractual provisions and correlating facts allegedly trigger subordination.
*841 Section 510(a) provides that a subordination agreement is enforceable in bankruptcy to the same extent the agreement is enforceable under applicable nonbankruptcy law. 11 U.S.C. § 510(a). In Count I Montgomery Ward alleges that the Note by its terms is subordinate to Section 4.1 of the Stockholders' Agreement and that both the Note and the Stockholders' Agreement are enforceable under Illinois law. These allegations strike me as sufficient to withstand a Rule 12(b)(6) dismissal. The complaint adequately puts Defendant on notice that Montgomery Ward will try to prove the Note and relevant section of the Stockholders' Agreement are valid and permit a § 510(a) subordination of the Claim to those of general unsecured creditors.
I nevertheless agree with Defendant that a motion for a more definite statement is justified. Given the complexity of the contracts, Defendant is entitled to more than Montgomery Ward's simple assertion that treatment of his Claim on par with other unsecured claims violates the Note and Section 4.1 of the Stockholders' Agreement. Principles of fair notice dictate Defendant is entitled to enough information at the outset of the case to identify the predicate facts and contractual provisions Montgomery Ward relies upon to permit subordination under § 510(a).
Consequently, although a request for a more definite statement is generally not favored, see Begier v. Cleveland Pneumatic (In re American Int'l Airways, Inc.), 66 B.R. 642, 645 (Bankr.E.D.Pa.1986), I am satisfied that Count I is vague and ambiguous for purposes of Rule 12(e). I think Defendant's motion fairly identifies the type of facts Montgomery Ward should set forth in an amended complaint (e.g., the relevant time and extent of capital impairment, if any, which of the defined contractual limitations apply, etc.). Defendant's Motion to Dismiss, or in the Alternative, for More Definite Statement, Doc. # 5, pp. 6-10, ¶¶ 20-28. Accordingly, I grant Defendant's motion for a more definite statement on Count I.
II. Statutory Subordination
In Count II of its complaint Montgomery Ward requests subordination of Defendant's Claim to the "extent [it] seeks damages of the type referenced in section 510(b) of the Bankruptcy Code." Complaint to Subordinate Redemption Note Claim, Doc. # 1, p. 6, ¶ 25. Section 510(b) mandates subordination of a claim for damages "arising from" the purchase or sale of securities of the debtor. The critical inquiry here is whether a claim based solely on the nonpayment of a promissory note issued by a debtor to consummate the repurchase of its own stock is one for damages "arising from" the purchase or sale of its securities. Under the plain language of § 510(b) I hold that it is not.[3]
The starting point for any case involving construction of a statute is the language itself. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 *842 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). Section 510(b) states in relevant part:
[A] claim arising from rescission of a purchase or sale of a security of the debtor . . ., for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security . . .
11 U.S.C. § 510(b).
The statute contemplates three kinds of claims subject to automatic subordination: (1) a claim based on the rescission or attempted rescission of a purchase or sale of a debtor's securities; (2) a claim based on damages that arise from the purchase or sale of a debtor's securities; and (3) a claim based on reimbursement or contribution allowed under § 502 on account of either (1) or (2).
At issue is the second category of claims. Montgomery Ward alleges the Note represents a debt based on the redemption of its common stock. It argues that any claim for damages under the Note therefore "arises from" the purchase or sale of its securities within the meaning of § 510(b).
Montgomery Ward's argument is premised on a distended interpretation of the causal relationship between the purchase or sale of the securities and the type of claim subject to subordination. The plain language of § 510(b) is more limited. It applies only to a claim that directly concerns the stock transaction itself, i.e., the actual purchase and sale of the debtor's security must give rise to the contested claim. E.g., Nugent v. American Broadcasting Sys., Inc. (In re Betacom of Phoenix, Inc.), 225 B.R. 703, 706 (D.Ariz.1998) ("The plain meaning of section 510(b) mandates that a claim must arise from the actual purchase or sale of a security"); In re Wyeth Co., 134 B.R. 920, 921 (Bankr.W.D.Mo.1991) (claim "must directly concern the stock transaction" to come within § 510(b)).
The use of "damages" in § 510(b) supports this conclusion. The term connotes a recovery broader than a simple claim on an unpaid debt. In re Wyeth Co., 134 B.R. at 921 (term "damages" implies some defect concerning the purchase or sale of securities); In re Blondheim Real Estate, Inc., 91 B.R. 639, 640 (Bankr.D.N.H.1988) (term "damages" means more than simple recovery of an unpaid debt due on an instrument). The term "damages" implies a tortious injury, as for example, one suffered from the fraudulent issue, purchase or sale of securities. In re Wyeth Co., 134 B.R. at 921; In re Blondheim Real Estate, Inc., 91 B.R. at 640. It also serves to include claims by investors who technically do not have a claim for rescission but who still have a securities fraud claim. In re Blondheim Real Estate, Inc., 91 B.R. at 641; accord In re Mid-American Waste Sys., 228 B.R. 816, 825 n. 5 (Bankr.D.Del.1999) (noting that "claims based on § 510(b) can also be based on other case law and statutory law dealing with fraudulent conduct generally, breach of fiduciary duty and similar types of misconduct" related to the purchase or sale of a debtor's security).
The legislative history of § 510(b) supports a conclusion that the plain language of the statute limits automatic subordination to claims that directly concern the stock transaction itself. Existing case law uniformly agrees that Congress enacted § 510(b) to prevent equity investors from converting their interests into higher priority general unsecured claims by asserting fraud or rescission claims. E.g., Christian Life Ctr. Litigation Defense *843 Comm. v. Silva (In re Christian Life Ctr.), 821 F.2d 1370, 1375 (9th Cir.1987); Washington Bancorporation v. F.D.I.C. (In re Washington Bancorporation), 1996 WL 148533, *19 n. 18 (D.D.C.1996); The Ltd. Partners Comm. of Amarex v. Official Trade Creditors' Comm. of Amarex (In re Amarex, Inc.), 78 B.R. 605, 609 (W.D.Ok.1987).
Congress wanted to implement a policy which allocates the risk of securities fraud onto the investor. In re Amarex, Inc., 78 B.R. at 609-10; In re Wyeth Co., 134 B.R. at 921. Allowing an equity holder to share pari passu with unsecured creditors by asserting a rescission or tort damage claim defeats this goal. In re Wyeth Co., 134 B.R. at 921-22. Thus § 510(b), by subordinating rescission or tort damage claims arising from an illegal stock transaction, keeps the risk where Congress intended to place it  on the investor. Id.
These policy considerations are notably absent in the present case. Defendant is not an equity holder trying to better his position by undoing the purchase transaction with a rescission or damage claim. Defendant is attempting to enforce the sale of stock to Montgomery Ward. Nor is Defendant attempting to reallocate the risk of an unlawful issuance of securities onto the backs of general unsecured creditors. No one contends that the shares of stock Montgomery Ward purchased were illegally issued. Thus I am satisfied that the facts of this case do not fit within the purpose or meaning of § 510(b).
My conclusion is in keeping with the decisions of other courts that have addressed automatic subordination under § 510(b). Not surprisingly, most of these cases involve shareholder claims for rescission or damages based on the fraudulent sale of securities or related fraudulent conduct. E.g., Levine, BRS v. Resolution Trust Corp. (In re Coronet Capital Co.), 1995 WL 429494, *8-9 (S.D.N.Y.1995) (section 510(b) applies to claims by noteholders for rescission of subordinated notes based on debtor's fraud and misrepresentations when issuing notes); In re Granite Partners, L.P., 208 B.R. 332, 334 (Bankr.S.D.N.Y.1997) (concluding that § 510(b) applies to claims based on allegations of post-investment fraud); In re Stern-Slegman-Prins Co., 86 B.R. 994, 999-1000 (Bankr.W.D.Mo.1988) (collecting cases applying § 510(b) to claims related to securities fraud).
The few courts that have considered statutory subordination in light of a claim based solely on enforcement of a debt instrument have concluded § 510(b) does not apply. See In re Washington Bancorporation, 1996 WL 148533, *20 (section 510(b) does not apply to a claim seeking to recover on commercial paper because the claim seeks only recovery on the debtor's debt obligations rather than on a tort claim in the sale of the paper); In re Wyeth Co., 134 B.R. at 921 (holding that claims based on notes issued by debtor to redeem stock neither fall under the plain language of § 510(b) nor "bear any relationship whatever" to its underlying policy concerns); In re Blondheim Real Estate, Inc., 91 B.R. at 640, 642 (section 510(b) does not apply to claims based on debtor's notes because such claims are for simple recovery of an unpaid debt due upon an instrument); In re Stern-Slegman-Prins Co., 86 B.R. at 1000 (claim of deceased shareholder's estate to enforce sale of stock to corporate debtor not subject to mandatory subordination because facts surrounding valid stock redemption agreement do not fit within purpose or meaning of § 510(b)).
The cases Montgomery Ward cites in support of its position are inapposite. Although it is true these cases interpret "damages arising from" under § 510(b) "broadly," I do not agree they support the *844 proposition that a claim to enforce a stock redemption note is subject to mandatory subordination.
First, the cases Montgomery Ward cites are distinguishable because they all involve allegations by securities holders of fraud or wrongdoing by the debtor. See In re NAL Financial Group, Inc., 237 B.R. 225 (Bankr.S.D.Fla.1999); In re Granite Partners, 208 B.R. at 334; In re Public Service Co. of New Hampshire, 129 B.R. 3 (Bankr.D.N.H.1991).
Second, the cases that read § 510(b) broadly confront an issue not implicated by a claim seeking simple recovery on a debt. These courts are concerned that a restrictive reading of § 510(b) arbitrarily excludes a claim based on fraud related to the purchase or sale of the debtor's securities but not caused by the initial purchase or sale transaction. Thus they read § 510(b) broadly to include a claim based on fraudulent activity after the original investment transaction, or a claim based on non-securities law dealing with fraudulent conduct generally related to the security transaction. These courts reason that the legislative policy that allocates the risk of securities fraud to investors demands subordination of all investor claims based on fraud connected to the purchase or sale of the debtor's securities, regardless of when the fraud occurred or on which legal cause of action the claimant proceeds.
It appears to me that the critical causal nexus in these cases is the alleged illegal or fraudulent conduct, not simply the claim's origin as one based on the claimant's status as a former stockholder. The leading case advocating a broad reading of § 510(b) illustrates this point. See In re Granite Partners, L.P., 208 B.R. 332 (Bankr.S.D.N.Y.1997).
In Granite Partners, the court had to decide whether "damages arising from" encompasses a claim for damages based on fraudulent inducement to retain the securities. 208 B.R. at 336. In that case, the shareholder claimants asserted damages based on the debtor's post investment fraud which they argued induced them to retain their stock instead of selling earlier. Id. at 335-36. The court held that § 510(b) was broad enough to apply to the investors' claims because the causality established by "arising from" could include a claim for damages based on a debtor's fraud following the initial sale of its securities. Id. at 339, 342 (a "broader reading [of § 510(b)] suggests that the purchase or sale must be part of the causal link although the injury may flow from a subsequent event."); See also In re NAL Financial Group, 237 B.R. at 234 (adopting Granite Partners ' approach and holding that claimant's causes of action for breach of contract, breach of fiduciary duty, and fraudulent inducement stem from agreement to buy debtor's securities and therefore arise from the purchase or sale of the debtor's securities within the meaning of § 510(b)); In re Public Service Co., of New Hampshire, 129 B.R. at 5 (court subordinated investor's claim based on debtor's alleged fraud, violations of securities law, and breach of contract because "the language of § 510(b) is broad enough to include breach of contract and related actions as well"); but see In re Amarex, Inc., 78 B.R. at 610 (legislative history, clear language, and purpose of § 510(b) limits mandatory subordination to initial illegality and does not encompass claims based upon later conduct by issuer of security).
Accordingly, absent an allegation of fraud in the purchase, sale or issuance of the debt instrument, § 510(b) does not apply to a claim seeking simple recovery of an unpaid debt due upon a promissory note. Indeed, Montgomery Ward's characterization of its default on Defendant's Note as giving rise to damages under *845 § 510(b) could lead to the untenable result that any claim based on default of a corporate bond or debenture is automatically subordinated to the claims of other unsecured creditors given the definition of "security" in § 101(49)(A). I do not believe Congress intended this result.
I note in closing that Montgomery Ward seems to be making the implicit argument that Defendant's status as a former shareholder somehow differentiates his Claim from that of other note holders or general unsecured creditors. I am not persuaded that the Note's origin as payment for stock is relevant under § 510(b). The provision is mandatory and the equity powers of this Court do not permit me to override specific statutory language. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). To the extent Montgomery Ward requests subordination based on its depiction of the Claim as an attempt to recover on an equity interest, Montgomery Ward must proceed under § 510(c).
I am also not persuaded by Montgomery Ward's final argument that the addendum to the Claim includes a request for "damages" of the kind subject to § 510(b). The addendum simply asserts a right to payment for damages incidental to enforcement of the Note. It does not allege damages based on the stock redemption transaction itself. Similarly, the addendum's "indemnification claim" is merely a reservation of rights and does not of itself allege damages based on the purchase or sale of Montgomery Ward's securities.
I therefore conclude that neither the plain language of § 510(b) nor its underlying policies apply to Defendant's Claim. Accordingly, I grant Defendant's motion to dismiss Count II of the Complaint.
III. Equitable Subordination.
In its final count, Montgomery Ward requests subordination of Defendant's Claim under § 510(c). Section 510(c) permits subordination of all or part of an allowed claim based on principles of equitable subordination. Montgomery Ward asserts the Claim is simply a delayed distribution of assets on account of its common stock and as a matter of equity the Claim should be treated as a shareholder interest.
Defendant responds by arguing that § 510(c) does not permit equitable subordination without a showing of creditor misconduct. The situation here does not dictate an extended discussion. In a recent opinion, I found that equitable subordination under § 510(c) may be permitted even in the absence of inequitable conduct by the creditor, i.e., the Third Circuit recognizes a claim of "no fault" equitable subordination. Montgomery Ward Holding Corp. v. McCaffery (In re Montgomery Ward Holding Corp.), Ch. 11 Case No. 97-1409(PJW), Adv. No. 99-561, (Bankr.D.Del. Dec. 11, 2000); see also Burden v. United States, 917 F.2d 115, 120-21 (3d Cir.1990). Accordingly, I find that Count III of the Complaint states a claim upon which relief may be granted, even without allegations that Defendant engaged in wrongdoing.
However, "no fault" equitable subordination does not permit the categorical subordination of a claim simply because it is based on a stock redemption note. A court must "explore the particular facts and circumstances presented in each case before determining whether subordination of a claim is warranted." Burden, 917 F.2d at 120.
Montgomery Ward's Complaint, however, is bereft of any allegation other than that the Claim is based on a note it *846 issued as payment to redeem stock. This alone does not form the basis for relief under § 510(c). Thus, I agree with Defendant that a more definite statement under Rule 12(e) is warranted. Fair notice requires that Montgomery Ward state the equitable facts and factors which it believes warrant subordination under § 510(c). For example, but without so finding, equitable subordination may be appropriate if in the aggregate the stock repurchase transactions resulted in an impairment of Montgomery Ward's capital as defined by relevant state corporate law.
Accordingly I grant Defendant's motion for a more definite statement under Rule 12(e) on Count III of the Complaint.

CONCLUSION
For the reasons set forth above, I will grant Defendant's motion to dismiss Count II of the Complaint. Count II fails to state a claim on which relief can be granted because as a matter of law § 510(b) does not apply to Defendant's Claim based solely on recovery on a stock redemption note. I will also grant Defendant's motion for a more definite statement pursuant to Rule 12(e) on Count I and Count III. Montgomery Ward does not identify the relevant facts and factors underlying its request for contractual and equitable subordination and I agree that Defendant is entitled to more specificity prior to filing a responsive pleading. However, I find that both remaining counts plead viable claims. Dismissal of Counts I and III under Rule 12(b)(6) is therefore not warranted.

ORDER
For the reasons set forth in the Court's Memorandum Opinion of this date, the motion (Doc. # 5) of defendant Robert Schoeberl to dismiss the complaint of Montgomery Ward Holding Corp., or in the alternative, for a more definite statement, is granted in part. Count II of the complaint is dismissed. The motion to dismiss Counts I and III is denied. The motion for a more definite statement as to Count I and Count III of the complaint is granted. Montgomery Ward Holding Corp. is directed to amend its complaint to set forth a more definite statement in support of Count I for contractual subordination of the defendant's proof of claim (Claim No. 9209) under 11 U.S.C. § 510(a) and Count III for equitable subordination of the defendant's proof of claim (Claim No. 9209) under 11 U.S.C. § 510(c). The amended complaint shall be filed within thirty days from the entry of this order.
NOTES
[1] Unless otherwise indicated, all references to "§ ____" are to a section of the Bankruptcy Code, 11 U.S.C. § 101 et seq.
[2] With modifications not relevant here, F.R.Bank.P. 7012 makes F.R.Civ.P. 12 applicable to adversary proceedings in bankruptcy.
[3] I note that a Rule 12(b)(6) motion to dismiss is treated as one for summary judgment and disposed of as provided in Rule 56 if the parties present matters outside the complaint on which the Court relies. To the extent Rule 56 is applicable to the present controversy, I find that its pleading standards have been met. The parties have fully briefed the relevant issues. See Defendant's Motion to Dismiss (Doc. # 5); Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss or, in the Alternative, for a More Definite Statement (Doc. # 6); Response to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, or in the Alternative, for a More Definite Statement (Doc. # 7).