In re MOBILE TOOL INTERNATION-AL, INC., et al., Debtors.

Official Committee of Unsecured Creditors and Mobile Tool International, Inc., Plaintiffs.

v.

American Capital Financial Services, Inc.; Brent Whalen; Malon Wilkus; William Callis; Adam Blumenthal; and Terry L. Ogle, Defendants.

Bankruptcy No. 02–12826(MFW).
Adversary No. A–03–53928.

United States Bankruptcy Court, D. Delaware.

March 4, 2004.

Steven M. Yoder, Esquire, Christopher A. Ward, Esquire, The Bayard Firm, Wilmington, DE, Steven K. Kortanek, Esquire, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Wilmington, DE, for plaintiffs.

Thomas G. Macauley, Esquire, Zuckerman Spaeder LLP, Wilmington, DE, for defendants.

Michael L. Bernstein, Esquire, Justin S. Antonipillai, Esquire, Jaimee Frohlich, Esquire, Arnold & Porter, Washington, DC, for U.S. Trustee.

## *MEMORANDUM OPINION* [1]

MARY F. WALRATH, Chief Judge.

Before the Court are the Motion and Cross Motion for judgment on the pleadings filed by the parties with respect to Count III of the Complaint which seeks to subordinate the Defendants' claims pursuant to section 510(b) of the Bankruptcy Code as damages arising from the purchase or sale of a security of the Debtors. For the following reasons, we grant the Defendants' Motion and deny the Plaintiffs' Cross Motion.

## I. *FACTUAL BACKGROUND*

Mobile Tool International, Inc., and Mobile Tool International Insulated Products, Inc., (collectively "the Debtors") manufacture, distribute and service equipment for the telecommunications, CATV, electric utility and construction industries. Brent Whalen; Malon Wilkus; William Callis; Adam Blumenthal; and Terry L. Ogle (collectively "the Individual Defendants") were officers of the Debtors.

On February 9, 1995, the Individual Defendants and the Debtors entered into a Stockholder Agreement wherein the Debtors agreed, upon notice, to repurchase the Class B Common Stock in the Debtors' company which had been purchased by the Individual Defendants. The Individual Defendants subsequently gave notice on November 1, 2001. At that time, the Debtors and the Individual Defendants entered into a Put Purchase Note Agreement ("the Note Agreement"), pursuant to which the Debtors issued notes to the Individual Defendants totaling $5,812,740.26.[2]

The Note Agreement also authorized American Capital Financial Services ("ACFS") to act as an agent for the Individual Defendants. Under the Note Agreement, the Debtors granted ACFS a lien and security interest in all of the Debtors' assets and properties.

On September 30, 2002, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Defendants each filed a claim based on the notes issued by the Debtors under the Note Agreement. In response, the Debtors and the Official Committee of Unsecured Creditors (collectively "the Plaintiffs") filed a complaint seeking, *inter alia,* to subordinate the Defendants' claims pursuant to section 510(b) of the Bankruptcy Code. The Defendants filed the instant Motion for Partial Judgment on the Pleadings and the Plaintiffs filed their Cross Motion for judgment on the pleadings. The Motions request a ruling on Count III of the Complaint which seeks subordination of the Defendants' claims under section 510(b). The parties have fully briefed the issues.[3]

## II. *JURISDICTION*

This Court has jurisdiction over this matter, which is a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B) and (O).

## III. *DISCUSSION*

### A. *Motion for Judgment on the Pleadings*

Under Rule 12(c) of the Federal Rules of Civil Procedure, as incorporated by sec-

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

**2.** This represented the total value of the 16,-442 shares of Class B Common Stock owned

by the Individual Defendants based on the price per share of $353.53.

**3.** Subsequent to briefing, the Debtors filed a Motion to convert their case to chapter 7. The Motion was granted on February 23, 2004, and became effective February 27, 2004.

tion 7012(b) of the Federal Rules of Bankruptcy Procedure, judgment on the pleadings is "appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998). The Court must accept the facts in the Complaint as true and must view those facts "in a light most favorable to the nonmoving party." *Id.* at 1371. If after review of the pleadings, the moving party has established that there is no material issue of fact and it is entitled to judgment as a matter of law, its motion shall be granted. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir.1989).

Here, after reviewing the pleadings in the light most favorable to the nonmoving parties, we find that there are no material facts in dispute and that the Defendants are entitled to partial judgment on the pleadings as a matter of law.

### B. *Subordination under 510(b)*

■ The Plaintiffs assert that the Defendants' claims are for damages "arising from" the purchase or sale of securities of the Debtors. As such, they argue that the claims are subject to subordination pursuant to section 510(b) of the Bankruptcy Code. The Defendants argue that their claims do not arise from the purchase or sale of securities, but rather they arise from promissory notes issued to them.

Section 510(b) of the Bankruptcy Code, in relevant part, provides:

"[A] claim arising from rescission of a purchase or sale of a security of the debtor ... for damages arising from the purchase or sale of such a security ... shall be subordinated to all claims."

11 U.S.C. § 510(b).

■ A claim arises from the purchase or sale of a security if there is a nexus or causal connection between the claim and the sale. *Baroda Hill Investments, Ltd. v. Telegroup, Inc.*, 281 F.3d 133, 138 (3d Cir. 2002). Admittedly, the language of section 510(b) provides little guidance in determining what satisfies the nexus or causal connection requirement. *Id.* However, the issue has been addressed in prior cases in this Circuit.

The *Montgomery Ward Holding Corp. v. Schoeberl* case is on all fours with this case. In that case, the debtor had redeemed shares of its stock from the claimant pre-petition by paying for a portion in cash and by issuing a promissory note for the balance. *In re Montgomery Ward Holding Corp.*, 272 B.R. 836 (Bankr.D.Del. 2001). After the debtor filed bankruptcy, it sought to subordinate the claim under section 510(b). The Court held that a claim based on a promissory note is not subject to subordination under section 510(b). *Id.* at 843–44. The Court stated that the purpose of section 510(b) was to "prevent equity investors from converting their claims into higher priority general unsecured claims." *Id.* at 842 (citing *Christian Life Ctr. Litigation Defense Comm. v. Silva*, 821 F.2d 1370, 1375 (9th Cir.1987)). Claims based on a debtor's note are not subject to section 510(b) subordination because such claims are only for the recovery of an unpaid debt. *Montgomery Ward Holding Corp.*, 272 B.R. at 843 (citing *In re Blondheim Real Estate, Inc.*, 91 B.R. 639, 642 (Bankr.D.N.H.1988)).

The Plaintiffs cite several cases which they say support their subordination argument. We find those cases distinguishable.

In the *Kaiser Group International* case, the debtors and claimants had executed a merger agreement in which shares of the debtor's business were issued to the claim-

ants. *In re Kaiser Group International, Inc.*, 260 B.R. 684 (Bankr.D.Del.2001). Pursuant to that agreement, if the debtor's stock did not reach a certain value by a certain date, the debtor was required to pay the difference. In that case, we concluded that the claim for the difference should be subordinated because the claimants neither divested themselves of "all indicia of ownership" nor invested in a "debt instrument." *Id.* at 688. In contrast, in this case, the Defendants did exchange their stock for a debt instrument.

Similarly, in the *International Wireless* case, the debtor had entered into an agreement with the claimants to repurchase stock it had issued to the claimants if it failed to make an initial public offering of its stock by a certain date. *In re International Wireless Communications Holdings, Inc.*, 257 B.R. 739 (Bankr.D.Del. 2001). When the debtor breached that agreement, the claimants filed a claim against the bankruptcy estate and argued that section 510(b) did not apply because their claim arose from a breach of contract not from a sale or purchase of stock. We rejected that argument. We held that there was a causal connection between the claim and the transaction and subordinated the claim pursuant to section 510(b). *Id.* at 745–46. Again, however, that case involved neither a separate promissory note nor a debt instrument and is, therefore, not applicable to this case.

In *Alta + Cast*, the debtor sought to subordinate a former employee's claim. *In re Alta + Cast, LLC.*, 301 B.R. 150 (Bankr. D.Del. Oct.24, 2003). There, the debtor and claimant had an agreement by which the debtor agreed to repurchase its stock from the claimant if he was terminated for cause. When the debtor did not repurchase the securities, the claimant obtained a judgment against the debtor. We held that the judgment arose from an agreement for the sale or purchase of a security because the claimant retained the risk of ownership by holding the stock until his termination. *Id.* at 155. Once again, the facts in *Alta + Cast* are distinguishable from this case because no separate debt instrument was issued and the claimant did not change his status from owner to creditor.

The fundamental concept in the cases cited by the Plaintiffs is that the nexus or causal connection required to employ section 510(b) exists where stock is retained by the claimant. When the stock is exchanged and a separate debt instrument is issued by the debtor, however, the claimant is converted from an owner of stock to a creditor. Such is the case here.

The Plaintiffs' argument for subordination of the claims relies heavily on the recent holding of the Third Circuit in *Telegroup*. There, the Court held that the scope of section 510(b) includes even claims "rooted in contract." *Telegroup*, 281 F.3d at 138. The Plaintiffs' argue that this expansion of section 510(b) is applicable to this case because the Defendants' claims are rooted in a contract, namely the Note Agreement. The Plaintiffs' argument, however, is misguided.

In *Telegroup*, the Third Circuit addressed whether a claim arises from" a sale of securities if the claim is based on activities occurring after the stock sale was completed. Other courts had drawn a distinction between conduct occurring at the time of the transaction involving securities and conduct occurring after the transaction. *See e.g., Montgomery Ward Holding Corp.*, 272 B.R. at 842 (holding that plain language of statute limits subordination to claims that involve actual sale of the stock); *In re Wyeth Co.*, 134 B.R. 920, 921 (Bankr.W.D.Mo.1991) (holding that claim must directly concern the stock transaction to be subject to 510(b) subordination).

Consequently, the claimants argued in *Telegroup* that post-transaction activities did not "arise from" the stock sale. The Third Circuit rejected that argument and held that a claim for breach of a provision in a stock purchase agreement requiring the issuer to use its best efforts to register its stock and ensure that the stock is freely tradeable "arises from" the purchase of the stock for the purposes of section 510(b) of the Bankruptcy Code. *Id.* at 142. In holding that even claims "rooted in contract" come under section 510(b), the Court only removed the distinction other courts had drawn between actions occurring at the time of stock sale and post-transaction activities. The Court's expanded definition, however, still only applies to claims held by shareholders and not to claims held by noteholders. Thus, the Third Circuit did not alter the long-standing principle that section 510(b) does not apply to instances when separate debt notes are actually issued in exchange for the stock.

■ Moreover, the Defendants' claims in this case do not resemble the type of transactions that section 510(b) seeks to subordinate. The purpose of section 510(b) is to prevent shareholders, who assume the risk of a business' failure by investing in securities rather than debt instruments, from filing claims as creditors when the debtor does fail. *Id.* at 141. The statute was designed to prevent stockholders from reaping the benefit of unlimited profits without also fully accepting the inherent risks of ownership, namely loss of their investment.

Here, the Defendants divested themselves of all forms of ownership when they sold the securities back to the Debtors and accepted notes in exchange. As such, they no longer enjoyed the primary benefit of ownership: the potential for unlimited profits. The Debtors' liability to the Defendants became fixed when the Debtors issued promissory notes. When the Defendants received the promissory notes, they removed the variable nature of their investment and placed themselves in the position of general creditors. Their claims are not the type which section 510(b) mandates be subordinated.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the Defendants' claims are not subordinated under section 510(b). Accordingly, the Defendants' Motion is granted and the Plaintiffs' Cross Motion is denied.

An appropriate Order is attached.