In re ALTA + CAST, LLC, Debtor.

No. 02–12982(MFW).

United States Bankruptcy Court, D. Delaware.

Oct. 24, 2003.

---

Christian J. Singewald, Linda Marie Carmichael, Marc Stephen Casarino, White and Williams, LLP, Wilmington, DE, for debtor.

Mark S. Kenney, Office of United States Trustee, Wilmington, DE, United States Trustee.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Debtor's objection to and Motion to subordinate the claim of Mark Hays ("Hays"). The Debtor asserts that Hays' claim must be subordinated pursuant to sections 510(a) and (b) of the Bankruptcy Code because it is based on the breach of an agreement to repurchase Hays' ownership interest in the Debtor. Hays asserts that his claim is not based on a contract to purchase equity, but is instead based on damages stemming from the Debtor's breach of his employment contract. For the following reasons, we sustain the Debtor's objection and grant the Motion to subordinate Hays' claim.

## I. FACTUAL BACKGROUND

In early 1996, Alta+Cast, LLC ("the Debtor") was formed to provide information technology to physicians and other healthcare providers. The Debtor contacted Hays to acquire software and technology programs possessed by Hays and his company, ACS Development Group ("ACS"), including a product called HInet. At the time, HInet had a significant client base and a pipeline of existing and potential customers in the healthcare industry.[2]

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested

matters by Federal Rule of Bankruptcy Procedure 9014.

**2.** Although the Debtor questions the assertions and representations made by Hays re-

The Debtor's acquisition of HInet was designed to enable the Debtor to bring a product to market without the delay and expense associated with developing new software and obtaining a new base of clients.

On November 8, 1996, ACS and the Debtor entered into a licensing agreement ("the License Agreement") by which ACS licensed HInet, and its derivative products, to the Debtor. In exchange, the Debtor agreed to: (1) employ Hays and his business partner, David Cross ("Cross"), for at least two years; (2) pay ACS $150,000 for the license; (3) pay Cross $87,500 within two years; and (4) give Cross 3.75% and Hays 15% of the total equity in the Debtor.

On November 6, 1997, Hays, ACS and the Debtor entered into an assignment agreement pursuant to which ACS transferred all rights, title and interest in HInet and any derivative works to the Debtor in exchange for the Debtor's agreement to: (1) execute employment agreements with Hays and Cross; (2) pay Cross an additional $87,500 in twelve monthly installments; (3) pay Cross and Hays royalties on HInet or derivative products sold to end users for home use; (4) guarantee Hays and Cross employment for a minimum of two years and (5) give them responsibility for managing the continuing development of HInet and its derivatives.

Hays joined Alta + Cast as Senior Vice President of Research and Development and Chief Technical Officer in November 1996, although no written employment agreement was signed at that time. In this position, Hays managed the continuing development of HInet and its derivative works at the Debtor's office in Boise, Idaho. In mid-August 1997, the Debtor and Hays negotiated a written employment agreement, which was ultimately dated October 23, 1997. Although Hays did not sign that agreement, he did sign an amendment dated August 27, 1998. The parties do not dispute the relevant terms of the employment agreement. (The employment agreement and its amendments are collectively referred to as "the Employment Agreement").

Despite the Debtor's expectations regarding the HInet products, by the fall of 1998, the Debtor had generated less than $850,000 in total revenue. During this same period, the Debtor had incurred expenses of approximately $14.8 million. A $12.5 million loan from QuadraMed in September 1998 kept the Debtor operating.

In early 1999, disagreements arose between the Debtor and Hays about his continued role with the company. Hays asserted that the Debtor terminated him on May 5, 1999; the Debtor asserted that instead it sought to renegotiate his Employment Agreement in connection with the Debtor's employment of a new CEO. On August 17, 1999, Hays sued the Debtor in the United States District Court for the District of Idaho, asserting that the Debtor had breached Hays' Employment Agreement and alleging damages in excess of $12 million ("the Idaho Action").

On October 10, 2002, the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtor continues to operate its business and manage its property as debtor in possession.

Hays was granted relief from the stay to conclude the Idaho Action. On August 28, 2003, the jury returned a special verdict in

garding the viability of this technology, it is not at issue in this dispute and is not ad-dressed herein.

which it determined that Hays was terminated by the Debtor on October 22, 1999, for just cause or failure to perform. As a result, pursuant to the terms of the Employment Agreement, the jury concluded that the Debtor was obligated to repurchase Hays' ownership interest, which it valued at $2,260,000 plus interest from the date of termination.[3]

Subsequent to the jury verdict, a hearing was held on September 3, 2003, to address the remaining issues regarding the allowance of Hays' claim. The parties were permitted to supplement their pleadings by letter briefs and exhibits filed on September 10, 2003. The issue before this Court is the priority of Hays' claim.[4] The Debtors assert that it must be subordinated to all other creditors' claims pursuant to section 510(a) and/or (b). Hays asserts that section does not apply to his claim and, therefore, his claim is entitled to treatment as a general unsecured claim.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III. DISCUSSION

### A. Subordination under Section 510(a)

■ The Debtor contends that Hays' claim must be subordinated under section 510(a). Section 510(a) provides that "[a]

subordination agreement is enforceable in a case under this title to the same extent such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

The Debtor asserts that the Employment Agreement requires the subordination of Hays' claim. Section 10(b) of the Employment Agreement provided that if Hays' employment was terminated for cause, the Debtor would repurchase Hays' membership interest in the Debtor. Section 11(a) provided that the purchase price of the membership interest would be the fair market value, payable in sixty equal monthly installments of principal and interest as evidenced by a promissory note ("the Note") issued by the Debtor. Section 11(g) of the Employment Agreement provided that the Note would be subordinated to any debt owed by the Debtor to any banks or trade creditors. The Debtor contends that this contract language evidences the parties' intent to subordinate any obligation to repurchase Hays' ownership interest to all other claims against the Debtor.

Hays concedes that his claim would be subject to subordination if the Debtor had in fact issued the Note to repurchase his ownership interest. However, Hays asserts that the Employment Agreement's subordination provision does not govern because the Note was never issued.

---

**3.** Section 10(b) of the Employment Agreement provided that if Hays' employment were terminated for cause, the Debtor would repurchase Hays' membership interest in the Debtor. Although it seems counterintuitive that Hays would be entitled to a claim of $2,260,000 when he was terminated for just cause, the Debtor explained that such a provision was common in technology start up companies. The founders of such a company include these provisions to prevent those who engage in misconduct from continuing to hold an ownership interest in the company

because such participation creates problems with employee and investor relations, risks bad press and may enable them to profit from their own wrongdoing.

**4.** The Debtor also asserted that, if we conclude that the claim is a claim for breach of the Employment Agreement not subject to subordination, it must be capped pursuant to section 502(b)(7). Since we determine that the claim is subordinated, we need not reach that issue.

We reject Hays' argument, because it ignores the fact that his claim is based on the jury's finding that the Debtor breached the Employment Agreement by failing to issue the Note. Hays is not entitled to be in a better position because of the Debtor's breach than he would be if the Debtor had fully performed. *See, e.g., Trosky v. Civil Serv. Comm.,* 539 Pa. 356, 363–364, 652 A.2d 813 (Pa.1995)(damages for breach of contract should not put injured party in better position than if there had been performance); *Dep't. of Transp. v. Brozzetti,* 684 A.2d 658, 665 (Pa. Commw.Ct.1996) (measure of damages applicable in breach of contract case is what would put wronged party in position he would have had absent a breach).

In this case, if the Debtor had fully performed and issued the Note under the Employment Agreement, Hays would have a subordinated claim in the amount of the value of his membership interest. The jury verdict awarding him a claim for the Debtor's failure to perform must similarly be subordinated. Thus, we conclude that Hays' claim is subordinated pursuant to section 11(g) of the Employment Agreement and section 510(a) of the Bankruptcy Code.

### B. *Subordination under Section 510(b)*

The Debtor alternatively asserts that, if Hays' claim is not subject to subordination under section 510(a), it must be subordinated pursuant to section 510(b) because it is a claim for damages stemming from the breach of the Debtor's obligation to repurchase Hays' ownership interest in the Debtor. Section 510(b) provides:

[A] claim arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

Section 510(b) represents Congress' judgment that claims by shareholders of a corporate debtor arising from their purchase or sale of stock must be subordinated to the claims of real creditors. *See In re Telegroup, Inc.,* 281 F.3d 133, 141 (3d Cir.2002). Section 510(b) prevents disappointed shareholders from recovering their investment by asserting claims for damages on parity with general unsecured creditors. *Id.* While some courts and commentators find that section 510(b) does not apply to conduct occurring after the issuance of stock, the Third Circuit in *Telegroup* held that nothing in the rationale supporting section 510(b) distinguishes shareholder claims that arise through post-issuance conduct from claims that arise from conduct at the time of issuance. *Id.* at 142. The nature of the claim (to recover a portion of the claimant's equity investment) is more important than the timing of the conduct. *Id.* The Third Circuit concluded that a shareholder should not be allowed to avoid subordination under section 510(b) simply by characterizing his claim as a breach of contract claim. *Id.* at 143. Thus, the Court held that a claim for breach of a stock purchase agreement requiring the issuer to use its best efforts to register its stock arises from the purchase/sale of stock and is subordinated under section 510(b). *Id.*

Hays contends, however, that the nature of his claim is not one for failure to repurchase his membership interest in the Debtor but is, in essence, a claim for

breach of the Employment Agreement.[5] Hays further emphasizes that he only sought damages for that breach, not an order requiring the Debtor to repurchase his ownership interest; the mere fact that the damages awarded by the jury are measured by the value of that ownership interest does not change the nature of the claim which was for the Debtor's breach of the Employment Agreement. Hays asserts that there is no causal connection between his claim and the purchase of his ownership interest in the Debtor; instead the cause of his claim is the breach of the Employment Agreement.

We disagree with Hays' assertion. Despite Hays' characterization, his claim does, in fact, have a causal connection to the Debtor's repurchase requirement. The jury found that the breach of the Employment Agreement was not the Debtor's termination of Hays but was the Debtor's failure to purchase back his membership interest. That is clearly a claim arising from an agreement for the sale or purchase of a security of the Debtor. In negotiating the terms of the License Agreement, Hays bargained for position as an owner. Through his Employment Agreement, Hays agreed that his ownership interest would be tied to his continued employment by requiring the Debtor to repurchase that interest upon his termination. As an equity holder, whose interest was tied to his employment, he assumed the risk of business failure and a subsequent decrease in stock value. Accordingly, we conclude that Hays' claim is properly subordinated under section 510(b).

## IV. CONCLUSION

For the foregoing reasons we grant the Debtor's Objection to the claim of Mark Hays and find that Hays' claim must be subordinated pursuant to section 510(a) and (b).

An appropriate Order is attached.

### ORDER

AND NOW, this **24th** day of **OCTOBER, 2003**, upon consideration of the Debtor's objection and Motion to subordinate the claim of Mark Hays and the opposition thereto, for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the Objection is **SUSTAINED** and the Motion to subordinate is **GRANTED**; and it is further

**ORDERED** that the claim of Mark Hays in the amount of $2,260,000 (plus interest from October 22, 1999, to the petition date) is subordinated pursuant to section 510(a) and (b) to all general unsecured claims and shall have the same priority as the ownership interests in the Debtors.

---

**5.** Hays also argues that, despite the jury verdict to the contrary, his claim is a claim for wages under the Pennsylvania Wage Payment and Collection Law ("WPCL"). He asserts that the question should not have gone to the jury, because the interpretation of the WPCL is a matter of law. *See, e.g., Scully v. U.S. WATS, Inc.*, 238 F.3d 497, 516 (3d Cir.2001).

However, the Idaho District Court disagreed with Hays on this point and allowed the issue to be decided by the jury. Hays argument is an impermissible collateral attack on that decision and, therefore, will not be considered. *See, e.g., Daniels v. United States*, 532 U.S. 374, 377, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001).