**In re BANKEST CAPITAL CORP., Debtor.**

**Banco Espirito Santo International, Ltd., Plaintiff,**

v.

**Diana Jean Garmendia, Defendant.**

**Bankruptcy No. 04–10941 BKC AJC.**

**Adversary No. 06–1495–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida, Miami Division.

Oct. 4, 2006.

Paul A. Avron, Esq., Miami, FL, for Banco Espirito Santo International Ltd, Plaintiff.

R. Thomas Farrar, Esq., Miami, FL, for Diana Jean Garmendia, Defendant.

Paul Steven Singerman, Esq, Miami, FL, for Banco Espirito Santo International Ltd., Plaintiff.

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COMPLAINT SEEKING SUBORDINATION OF CLAIM ASSERTED BY DIANA GARMENDIA PURSUANT TO 11 U.S.C. § 510(b)

A. JAY CRISTOL, Chief Judge.

**THE MATTER** came before the Court on August 10, 2006 at 2:00 p.m. in Miami, Florida on the Motion of Plaintiff Banco Espirito Santo International, Ltd. ("BESIL") for partial summary judgment (the "Motion") (C.P.# 7) on Count I of its Complaint Seeking Subordination of Claim Asserted by Diana Garmendia Pursuant to 11 U.S.C. § 510(b) and Recharacterization of Claim as Capital Contributions (the "Complaint") (C.P.# 1), Defendant Diana Garmendia's ("Garmendia") Memorandum in Opposition to BESIL's Motion for Partial Summary Judgment (the "Opposition") (C.P.# 12) and the Affidavit of her attorney, R. Thomas Farrar (the "Farrar Affidavit") (C.P.# 14).

The Motion seeks partial summary judgment on Count I of the Complaint pursuant to 11 U.S.C. § 510(b). Specifically, BESIL asserts Garmendia's claim in the bankruptcy case must be subordinated because the claim against the Debtor Bankest Capital Corp. ("Capital" or the "Debtor") is not simply and solely for money loaned, but rather for tort-based and statutory damages. Garmendia, on the other hand, contends the only claims she has asserted in this case are for the money loaned, as evidenced by the debt instruments.

BESIL relies on various documents and representations in other pending (and dismissed) lawsuits to support its motion. First, BESIL relies on the facts alleged by Garmendia in an *Amended Complaint* (the "Garmendia Complaint") she filed in the United States District Court, Southern District of Florida, Case No. 03–22580–CIV–HUCK/TURNOFF (the "District Court Case"), in which she sued several defendants, including Capital, for, *inter alia*, damages arising from the purchase of securities of the Debtor including, but not limited to, treble damages for violation of Florida's civil theft statute. BESIL also relies on the allegations in a Complaint for Damages (the "State Court Complaint") Garmendia filed in the Miami–Dade County Circuit Court, Case No. 06–10558 CA 10, after the filing of her Proof of Claim in the Capital bankruptcy case in which she sued the Bank and Eduardo Orlansky (Capital's principal), reserving the right to assert claims for punitive damages. Finally, BESIL asserts the testimony of Garmendia at a Bankruptcy Rule 2004 examination conducted by BESIL supports subordination.

### Statement of Undisputed Facts

On January 5, 2005, Garmendia filed a proof of claim as an unsecured creditor of the Debtor, Bankest Capital Corp. The proof of claim indicates Garmendia's claim is for "money loaned" between June 2002 through July 2003, in the principal amount of $4,580,000. Attached to the proof of claim is a spread sheet indicating loans

were made and promissory notes were issued ("Notes").

Approximately one year earlier, on January 15, 2004, Garmendia filed the Garmendia Complaint alleging:

This Court has federal question jurisdiction over the subject matter of the claims asserted in this complaint...in that they include *claims for damages...arising under the laws of the United States regulating the sale of securities, specifically pursuant to section 10(b) of the Securities Exchange Act of 1934 ..., 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission ..., 17 C.F.R. § 240.10b-5.*

Motion, Ex. A, ¶ 1 (Italics added). The Garmendia Complaint asserted various claims against the Debtor and other defendants, not just for recovery under the debt instruments but also for common law fraud and for securities fraud under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission, 17 C.F.R. § 240.10b-5.[1] Garmendia alleged that she was defrauded into making the investment, and as a result she was damaged. *See id.*, ¶¶ 4, 20, 21, 37–40, 42–44. Garmendia further alleged that the fraud practiced upon her was a "civil theft" violative of *Fla. Stat.* § 812.014 and, consequently, pursuant to *Fla. Stat.* § 772.11 she sought treble damages in the amount of $15 million. *Id.*, ¶¶ 46–48.

On February 5, 2004, Garmendia, Sofimar International, Inc. and Maria Delores Garcia filed an involuntary petition against Capital in the U.S. Bankruptcy Court, Southern District of Florida, Case 04–10941–BKC–AJC.

Thereafter, at a hearing before the District Court on March 9, 2004, Garmendia's counsel stated that Garmendia "might voluntarily dismiss [the District Court Case] and proceed with the claims in the bankruptcy court." On March 19, 2004, Garmendia did, in fact, file a motion to voluntarily dismiss the District Court Case, and on March 22, 2004, the District Court entered an order granting the Dismissal Motion.

On August 11, 2004, Capital consented to entry of an order for relief pursuant to chapter 11 of the Bankruptcy Code.

On November 11, 2004, BESIL conducted an examination of Garmendia, pursuant to Rule 2004, Federal Rules of Bankruptcy Procedure. Motion, Ex. B (Deposition Transcript). Garmendia testified as to paragraph 4 of the Garmendia Complaint which alleged that "in connection with the acts, conduct and other wrongs set forth herein, the defendants [including the Debtor] employed devices, schemes and artifices to defraud in connection with Garmendia's investment securities" as follows: "the underlying wrong...is that I had misplaced confidence in...Eduardo Orlansky, and...none of [what he told me] was true," and that "wherever [my] money was placed, that was a device, scheme or arti-

---

**1.** Count I of the Garmendia Complaint, entitled "Securities Fraud," sought damages for "violation[s] of the antifraud provisions of the [Securities] Exchange Act and the SEC's Rule 10b–5." *Id.*, ¶ 40. Count II of the Garmendia Complaint, entitled "Claim on Notes or Other Securities," sought "amounts due and owing on the notes or other securities that Garmendia received or was to receive." *Id.* Count III of the Garmendia Complaint, entitled "Common Law Fraud," sought damages for fraudulent representations (and omissions) in connection with the Investment. *Id.*, ¶¶ 42–44. Count IV of the Garmendia Complaint, entitled "Civil Theft," sought *treble* damages for violation of Florida's civil theft statute as a result of the fraud practiced upon her. *Id.*, ¶¶ 46–48.

fice to defraud me." Motion, Ex. B, at 105.

On November 17, 2004, Capital's Chapter 11 case was converted to a case under chapter 7 of the Code. On November 18, 2004, Soneet R. Kapila was appointed as trustee of the Debtor's Chapter 7 estate.

On June 1, 2006, approximately eighteen (18) months after filing her Proof of Claim, Garmendia filed the State Court Complaint against the Bank and Eduardo Orlansky. In the State Court Complaint, Garmendia brought claims for *inter alia* damages based upon fraud and partnership liability. The State Court Complaint states a count for fraud (Count II), and counts for conversion (Count III) and negligent misrepresentation (Count VI). The complaint further states that Garmendia "reserves the right to amend her pleadings following appropriate evidentiary showings to seek punitive damages, including vicarious liability for punitive damages." Motion, Ex. F, at 80. The State Court Complaint states no claims or causes of action against the Debtor.

### Summary Judgment Standard

Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather, as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548. "The purpose of summary judgment is to assess the evidence to determine whether there is an actual need for trial." *Banco Latino International v. Gomez Lopez*, 95 F.Supp.2d. 1327, 1332

(S.D.Fla.2000). To defeat a motion for summary judgment, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. "The mere existence of a scintilla of evidence in support of the [opposing party's] position will not be sufficient to forestall summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, once the moving party has established his burden of proof, the party opposing the motion for summary judgment must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### Analysis

**A. The Promissory Notes Issued to Garmendia by the Debtor are Securities as Contemplated by Section 510(b) and Defined in 11 U.S.C. § 101(49)(A)(i)**

 Section 510(b) provides, in pertinent part, as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b). Section 101(49)(A)(i) of the Bankruptcy Code defines "security" to include "note." 11 U.S.C. § 101(49)(A)(i); *In re Coronet Capital Co.,*

1995 WL 429494, *8 (S.D.N.Y. July 20, 1995) ("Section 510(b) refers to 'security', and § 101(49)(A)(i) of the Code defines 'security' to include 'note'.") citing cases including *In re Blondheim Real Estate*, 91 B.R. 639, 640 (Bankr.D.N.H.1988); *see also In re NAL Financial Group, Inc.*, 237 B.R. 225, 230 (Bankr.S.D.Fla.1999) (debenture was a "security" as defined in Code section 101(49)(A)(i) for purposes of the court's Section 510(b) mandatory subordination analysis). Garmendia concedes that a promissory note is within the literal definition of Section 101(49)(A)(i) of the Bankruptcy Code. Opposition, at 8; Tr. at 56 ("The fact that it's a [promissory] note, okay, it's a security.").

The unambiguous language of the statute specifically *includes* debt securities such as promissory notes, 11 U.S.C. § 101(49)(A)(i); *In re Coronet Capital Co.*, 1995 WL 429494, *8 (finding that promissory notes are within the meaning of Section 510(b), and explicitly rejecting the argument that Section 510(b) should be restricted to equity securities), bonds, 11 U.S.C. § 101(49)(A)(iv), and debentures, 11 U.S.C. § 101(49)(A)(v); *In re NAL Financial Group, Inc.*, 237 B.R. at 230 (finding that debentures are securities with the meaning of Section 510(b)). Based on the unambiguous language of the statute and the above-cited case law, the Court finds as a matter of law that the promissory notes issued to Garmendia by the Debtor that are the subject of this Adversary Proceeding are "securities" as contemplated by Section 510(b) and as defined by 11 U.S.C. § 101(49)(A)(i).

**B.** *Garmendia's Claim Is Not Subject to Mandatory Subordination Pursuant To Section 510(b) on a Summary Judgment Motion*

■ Garmendia's proof of claim indicates she is only claiming recovery on the promissory notes issued her, and she contends her claim is therefore not subject to subordination under section 510(b). BESIL, on the other hand, asserts Garmendia is seeking recovery for "damages arising from the purchase or sale of [ ] a security," and not just for debt based on the Notes. BESIL relies on causes of action brought in other judicial proceedings not before this court, as well as Garmendia's Rule 2004 testimony, to establish Garmendia is claiming damages in addition to recovery on the Notes.

The legislative history relating to section 510(b) reveals a very specific type of problem that Congress sought to address by enacting the statute. The problem was described as follows:

> A difficult policy question to be resolved in business bankruptcy concerns the relative status of a security hold who seeks to rescind his purchase of securities or to sue for damages based on such a purchase: should he be treated as a general unsecured creditor based on his tort claim for rescission, or should his claim be subordinated? H.Rep. No. 595, 95th Cong., 1st Sess. 194 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6154.

The concern was that an equity holder could elevate his claim to that of an unsecured creditor through a claim for rescission of his purchase of the debtor's securities or a tort claim for damages arising out of his purchase of the debtor's securities. *Id.* Section 510(b) seeks to prevent that from occurring. The philosophy behind this Code section is that in bankruptcy where there is fraud or illegality in the sale of securities, it is the purchaser of the securities that must bear the risk. By allowing an equity holder asserting a rescission or tort damage claim to share *pari passu* with unsecured creditors, the unsecured creditors are forced to bear that

risk. But subordination of rescission or tort damage claims arising out of an illegal stock transaction keeps the risk where it belongs—upon the shoulders of the equity purchaser. *Id.*

Whether Garmendia's claim must be subordinated under 11 U.S.C. § 510(b) depends upon the type of claim she is asserting in this bankruptcy case. From the record before the Court, it appears Garmendia is only seeking recovery from the estate on the promissory notes issued to her by the Debtor. Garmendia's proof of claim explicitly indicates that she is seeking recovery on the Notes and the documents attached to the proof support her contention. The Court does not believe Garmendia's claim seeks "damages" so as to justify subordination. The use of the term "damages" implies more than a simple debt. At a minimum, there must be a claim for damages resulting from some defect with reference to a purchase or sale of securities. Such a claim must directly concern the stock transaction and not merely be a claim on a debt. *In re Blondheim Real Estate, Inc.,* 91 B.R. at 640–41.

Application of 11 U.S.C. § 510(b) to Garmendia's claim is inappropriate at this juncture. Garmendia's claim, as stated in her proof of claim, does not appear to be one of an equity holder who is trying to better her position by trying to undo the purchase transaction with a rescission or damage claim. Her claim is one simply arising from the debt on the Notes. BESIL's reliance on allegations made in other judicial proceedings is misplaced.

■ Statutory subordination under 11 U.S.C. § 510(b) does not apply if Garmendia's claim is based solely on enforcement of a debt instrument. *See In re Washington Bancorporation,* (section 510(b) does not apply to a claim seeking to recover on commercial paper because the claim seeks only recovery on the debtor's debt obli-gations rather than on a tort claim in the sale of the paper); *In re Wyeth Co.,* 134 B.R. 920, 921 (Bankr.W.D.Mo.1991) (claims based on notes issued by debtor to redeem stock neither fall under plain language of section 510(b) nor "bear any relationship whatever" to its underlying policy concerns); *Blondheim Real Estate,* 91 B.R. at 640–642 (section 510(b) does not apply to claims based on debtor's notes because such claims are for simply recovery of an unpaid debt due upon an instrument). From the record, the parties dispute a genuine issue of material fact—to wit, whether Garmendia's claim against Debtor's estate seeks to simply and solely recover an unpaid debt due upon an instrument.

■ Garmendia's claim, as set forth in her proof of claim, appears to be for money loaned, as evidenced by the Notes. At the hearing before the Court, BESIL conceded that Garmendia's claim is facially no different than the kind of claim a bank would file based upon an unsecured promissory note issued by a debtor. BESIL insists, however, that Garmendia's claim must nonetheless be subordinated because she once asserted claims against the Debtor and others elsewhere which arise out of the same transactions or occurrences in which the loans were made and the Notes issued and are based on tort theories—notwithstanding that those claims have been dismissed. The Court disagrees.

Allegations made in the Garmendia Complaint, in the now dismissed District Court Case, and allegations made in the State Court Complaint, which was not filed against this Debtor, are of no relevance to the issue of statutory subordination in this case. Section 510(b) involves subordination of claims "[f]or the purpose of distribution under this title...." Distribution of property of the estate is made with respect to a claim filed in a case. Subordination of

claims under section 510(b) "for the purpose of distribution" accordingly apply to claims filed under section 501 and allowed under section 502, as they are the claims that are considered for purposes of distribution under the Code. Thus, unless a claim is the subject of a properly filed proof of claim or other comparable order, it will not be allowed and cannot be considered "for the purpose of distribution" under the Bankruptcy Code.

The Court agrees with BESIL that pleadings and other statements by counsel can constitute admissible evidence against the client and can be regarded as judicial admissions, but the Court is not persuaded that Garmendia's assertions in the District Court Case are relevant to her claim in this case. The District Court Case was voluntarily dismissed and no such claim for damages is now pending against the Debtor. Moreover, the Court does not believe that Garmendia's allegations in the State Court Complaint, which asserts no claims against this Debtor, resolves the factual issue of whether Garmendia is seeking "damages" by her proof of claim in this case.

The Court believes this case should proceed to a trial on the merits to determine, upon presentation of all evidence, whether the amount Garmendia is actually seeking to recover in her proof of claim includes an amount for "damages arising from the purchase or sale of [ ] a security," as that phrase is used in the statute. Any claim, or portion thereof, that seeks "damages", and not simply recovery on a debt instrument, will be statutorily subordinated. If Garmendia proves she is only seeking recovery on the Notes, then subordination pursuant to 11 U.S.C. § 510(b) would be inappropriate.

Accordingly, based upon the record before it, it is

**ORDERED AND ADJUDGED** that the Motion of Plaintiff Banco Espirito Santo International, Ltd. for partial summary judgment on Count I of its Complaint Seeking Subordination of Claim Asserted by Diana Garmendia Pursuant to 11 U.S.C. § 510(b) and Recharacterization of Claim as Capital Contributions (C.P.# 7) is DENIED.